UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN KEENER,

          Plaintiff,

vs.                      Case No.  2:04-cv-562-FtM-29SPC

UTILX CORPORATION,

          Defendant.

_____

## OPINION AND ORDER

     This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #27) filed on December 30, 2005.  Plaintiff John Keener (plaintiff or Keener) filed his Response on February 24, 2006.  (Doc. #39).  Defendant Utilx Corporation (defendant or Utilx) submitted affidavits and depositions in support of its brief.

### I.

     Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party bears the burden of identifying those portions of the pleadings,

depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000), cert. denied, 534 U.S. 815 (2001). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

Viewed in the light most favorable to plaintiff, the summary judgment facts are as follows: Utilx is incorporated in Delaware with its principal place of business in Kent, Washington. Utilx is an electrical utility contractor, and its core business is underground power cable rehabilitation for the electrical utility

industry.   Rehabilitation of underground cable can be done in at least two ways, "cable injection" and "cable pulling."   "Cable injection" involves knowledge of injection and specific craft work and proficiency with TDR equipment.   This process rehabilitates the underground power cable by injecting silicone into the cable, and thereby rejuvenating the cable.   However, when Utilx is unable to repair the underground cable with the "cable injection" process, Utilx uses a "cable pulling" process to remove old cables and install new ones.   This process involves a three-person crew of line workers that are supervised by a foreman.   A team leader or coordinator supervises several crews and their foremen.

During plaintiff's employment with Utilx, the "cable injection" and the "cable pulling" processes were separated into two divisions of the company.   The divisions merged into one division in September 2003.

Because Utilx employees are exposed to high voltage electricity when engaged in the "cable injection" and "cable pulling" activities, Utilx requires that all employees conduct these activities in a safe manner without putting themselves or others at risk.   This includes wearing personal protective equipment.   Utilx provides regular training programs in general safety procedures and various techniques in handling high-voltage cables.   Utilx also emphasizes safe workplace procedures for

linemen in several employment policies and procedure manuals.  The Safety Policy states as follows:

> Employees who violate safety standards, who cause hazardous or dangerous situations, or who fail to report or, where appropriate, remedy such situations, may be subject to disciplinary action, up to and including termination of employment.

On August 30, 1995, Utilx employed plaintiff John Keener as a journeyman/line worker in the "cable pulling" division in Utilx's Port Charlotte office.  In March 1999, plaintiff was promoted to crew leader.  Prior to August 1, 2001, while plaintiff was the foreman of a crew of line workers, one of the line workers suffered a serious personal injury as a result of exposure to an energized transformer.  Plaintiff was not disciplined for this incident.

On August 1, 2001, plaintiff was the foreman of a crew of line workers, and another line worker became seriously injured from exposure to an energized transformer.  In this second incident, Scott Reid, plaintiff's supervisor, issued a written warning to plaintiff and suspended him for failing to make sure the line worker on his crew followed proper safety procedures, including the use of protective gear.

While on suspension, plaintiff sought employment with another utility contractor, Red Simpson, and continued with that employer until January 16, 2003.  Utilx did not consider plaintiff an employee during that time.

Two months later, Utilx rehired plaintiff, who returned to work in the "cable pulling" division.  In June 2003, plaintiff was promoted to a foreman position in that division.

On August 25, 2003, Utilx hired Arthur Brown, who was twenty-three years old at the time.  Brown was considered a journeyman/lineman, and performed the same duties as plaintiff did.

In September and October 2003, Utilx underwent changes to its business organization.  As mentioned above, the "cable injection" division and the "cable pulling" division merged into one division.  Consequently, the employees performed all services related to underground power cable rehabilitation.  Moreover, Utilx laid off several managers.  Subsequently, due to a decline in business, Utilx mandated budget cuts in its Florida operations and eventually closed the Port Charlotte office.  Plaintiff's position changed from a crew leader doing cable pulling to being a crew leader doing cable injections.

As a result of the budget cuts, Utilx was forced to lay off three of its employees in the Port Charlotte office.  To determine whom Utilx should terminate, Reid and Donna Durfey, Reid's supervisor, used a "layoff list" matrix which Reid prepared.  The matrix included four categories of ratings for each employee.  These categories were safety, proficiency, knowledge, and accuracy.  Additionally, points on years of service were given to the

employees rating points.   After analyzing the matrix results, Utilx terminated plaintiff's employment in November 2003.

After plaintiff exhausted his administrative remedies, he filed a Complaint alleging that Utilx terminated him based on his age in violation of the Florida Civil Rights Act in the Circuit Court for the Twentieth Judicial Circuit, in and for Charlotte County, Florida.   Defendant properly removed the action to this Court on November 15, 2004, based upon diversity jurisdiction. (Doc. #1).   After discovery was conducted, defendant filed this motion seeking summary judgment in its favor for the age discrimination claim.   Additional factual allegations are set forth below.

## II.

Plaintiff claims that Utilx discriminated against him based upon his age, in violation of the Florida Civil Rights Act.   The Eleventh Circuit analyzes claims under the Florida Civil Rights Act using the same principles developed for analyzing Title VII cases. Morris v. Arizona Beverage Co., L.L.C., 126 Fed. Appx. 941, 941 n.1 (11th Cir. 2005).   To establish a claim under the Florida Civil Rights Act in a case where the employee's job was eliminated, a plaintiff must demonstrate:   (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action;(3) that he was qualified to do the job; and (4) evidence by which the fact

finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision to terminate the employee.  Jameson v. The Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996).

**A.  Direct Evidence of Discrimination**

The Court finds that plaintiff has not presented direct evidence of age discrimination.  The Eleventh Circuit has defined direct evidence of discrimination as evidence which reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998).  Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004)(quoting Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir.1997)).  "In other words, the evidence must indicate that the complained-of employment decision was motivated by the decision-maker's ageism." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358-59 (11th Cir. 1999)(emphasis in original).  As a result, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age" will constitute direct evidence of discrimination.  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990); see also Rojas v. Florida, 285 F.3d 1339,

1342 (11th Cir. 2002).  An example of "direct evidence would be management memorandum saying, 'Fire Earley – he is too old.'" <u>Earley</u>, 907 F.2d at 1082.  Plaintiff has presented no evidence which meets this rigorous standard.

The most probative piece of alleged direct evidence cited by plaintiff is a comment by Scott Reid to plaintiff's co-worker that "if it was up to [Reid], that he would get rid of everybody over 50."  (Doc. #32, Deposition of John Keener (Keener Dep.), 152:2-20).  However, there is no evidence indicating that Reid made this comment immediately before, during, or after terminating plaintiff's employment.  The record lacks any temporal link between the statement and plaintiff's termination.  Thus, the Court finds no direct evidence of age discrimination.

**B.  Circumstantial Evidence of Discrimination**

In establishing age discrimination claims based on circumstantial evidence, the Eleventh Circuit adopted a variant of the <u>McDonnell Douglas</u> test applicable to reduction-in-force cases. <u>Earley</u>, 907 F.2d at 1083.  "Where a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough.  <u>Barnes</u>, 814 F.2d at 609; <u>cf. Rosenfield v. Wellington Leisure Prods., Inc.</u>, 827 F.2d 1493, 1495 n.2 (11th Cir. 1987) (where plaintiff is discharged from previously

held position, "prong requiring proof of qualification [for that position] is removed").

In this case, the Court concludes that plaintiff has established a prima facie case of age discrimination. First, there is no dispute that plaintiff has met the first requirement. Plaintiff is a member of the protected group and he was subjected to an adverse employment action, i.e., his employment was terminated.

As for the second element, the Court concludes that plaintiff was "qualified" for his position for "cable pulling" and "cable injection", and thereby satisfied the second prima facie requirement.  The Eleventh Circuit recognizes that if a plaintiff has enjoyed a long tenure at a certain position, the courts may infer that he/she is qualified to hold that particular position. Clark v. Coats & Clark, 990 F.2d 1217, 1227 (11th Cir. 1993)(inferring a plaintiff's job qualifications from his 25 years of experience); see also Pace v. Southern Ry. Sys., 701 F.2d 1383, 1386 n.7 (11th Cir. 1983)(finding that "where a plaintiff has held a position for a significant period of time, qualification for that position, sufficient to satisfy a prima facie case, can be inferred.").  Plaintiff worked with underground cable and underground equipment since 1966.  (Keener Dep., Exh. 9). Plaintiff worked as a first class lineman and pulled underground cable from the mid-1960s to the mid-1970s.  (Id.)  He then worked

as an underground/aerial troubleman and worked with electrical
cable from the mid-1970s to 1990. (Id.)  Throughout the 1990s to
the present, it appears that plaintiff worked on rehabilitating
underground power cable.   (Id.)  Additionally, plaintiff was
recognized for outstanding performance from some of his former
employers. (Id.)  Moreover, Utilx promoted plaintiff from lineman
to crew leader.  Plaintiff's former supervisor, Charlie Robinson,
testified that plaintiff "has tons and tons of years experience.
He's been in this trade all his life also. . . . John is a very
knowledgeable individual."  (Robinson Dep. 14:24-15:8).   While
Robinson's observation is limited to plaintiff's "cable pulling"
work, Utilx's merger of the two division did not entirely eliminate
the "cable pulling" services.   Plaintiff performed "cable
injection" services as well as "cable pulling" services.  There is
no evidence in the record to show that plaintiff was not qualified
to perform "cable injection" services.  Indeed, the record reflects
that Reid gave a plaintiff a low rating for his "cable injection"
skills, not that Reid evaluated that plaintiff could not perform
the "cable injection" services.  Thus, the Court concludes that
plaintiff was qualified for his position and any positions in the
newly merged division of "cable pulling" and "cable injection."

Finally, the Court finds that plaintiff presented evidence by
which a fact finder might reasonably conclude that the employer
intended to discriminate on the basis of age in reaching the

decision at issue.  Plaintiff submitted testimony showing that Reid allegedly made several discriminatory remarks regarding Reid's attitude towards older employees.  Moreover, Reid indicated that, if he had the decision-making authority, he would fire any worker who was over the age of forty or fifty.  Being the sole person to rate the employees' performances, Reid's influence on the decision to terminate plaintiff's employment could be evidence that a fact finder might reasonably conclude Utilx intended to discriminate against plaintiff based on his age.

### C.  Pretext

Having satisfied all the elements for a prima facie case of age discrimination, the burden shifts to Utilx to proffer legitimate, nondiscriminatory reasons for its decision to terminate plaintiff's employment.  If such reasons are identified, a plaintiff then bears the ultimate burden of proving them to be a pretext for age discrimination.  Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998).

In this case, Utilx clearly offered legitimate, nondiscriminatory reasons for terminating plaintiff (poor safety performance and reduction in force).  Therefore, plaintiff bears the burden of offering enough probative evidence so that a reasonable jury might conclude that Utilx's reasons for termination were a pretext for age discrimination.  See Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 658 (11th Cir. 1998).  In the

summary judgment context, a court must conduct this inquiry by determining whether a jury "could reasonably infer discrimination if the facts presented [by the plaintiff] remain unrebutted." Jameson, 75 F.3d at 1531. The court "must avoid weighing conflicting evidence or making credibility determinations. Rather, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn his favor." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). After reviewing the entire record, the Court finds that plaintiff has made this requisite showing.

Circumstantial evidence was presented of Reid's discriminatory animus towards older Utilx employees under his direct supervision. Plaintiff testified that Reid made comments such as "you can't teach an old dog new tricks[,]" (Doc. #32, Deposition of John Keener (Keener Dep.), 135:13-22; 146:5-24; 176:21-178:6; 186:18-197:7), and that he would get rid of everyone over the age of forty (id., 177:4-18, Exh. 33). Charlie Robinson, plaintiff's former supervisor at Utilx, testified that Reid made comments such as "old farts," "fresh blood," and "getting rid of everyone over the age of fifty." (Doc. #32, Deposition of Charlie Robinson (Robinson Dep.), 54:18-59:16). Russell Squire, another former supervisor at Utilx, testified that Reid made daily comments such as "[w]e have to get younger guys trained up because these old farts, they're not going to be here and we're going to be stuck[,]" (Doc. #32, Deposition of

Russell Squire (Squire Dep.), 17:8-10), and "[w]e need fresh blood[,]" (id., 17:20-22) from September 2000 to September 2003 (id., 15:16-17:22).  Joseph Pellico, another Utilx crew leader, testified that Reid referred to older employees as "gray hairs." (Doc. #32, Deposition of Joseph Pellico (Pellico Dep.), 28:24-29:8; 42:16-22).

Utilx contends that plaintiff was laid off due to the reduction in force and plaintiff's poor performance.  Specifically, Utilx cites to plaintiff's safety performance rating for which he received a one out of a ten rating, and ten being the highest mark. Additionally, Utilx asserts that it underwent budget cuts due to a loss in business and these budget cuts required a reduction in force of a full crew.  Plaintiff, however, flatly denies these allegations, and has adduced sufficient evidence to create a genuine dispute of material fact as to his job performance and to Utilx's alleged reduction in force.

First, Reid's rating of plaintiff's performance is disputed by Charlie Robinson, Utilx's former safety director for the "cable pulling" division.  Robinson had the opportunity to observe plaintiff's safety performance, and disagreed with Reid's assigned rating related to plaintiff's performance.  (Robinson Dep., 19:14-21:23).  Robinson testified that he would have rated plaintiff with an eight rating for plaintiff's safety performance.  (Id., 15:9-24).  Additionally, Russell Squire, who was plaintiff's supervisor,

testified that he worked with plaintiff for five years and "safety was a major priority in [plaintiff's] work." (Squire Dep., 9:18-22). Squire and Alfred Higginbottom, a crew leader who observed plaintiff's performance, also disagreed with Reid's rating. (See id., 31:1-33:2; see also Doc. #32, Deposition of Alfred Higginbottom, 8:1-9:14).

Second, while Utilx claimed that plaintiff's employment was terminated due to a reduction in force, Utilx hired a substantially younger person, Arthur Brown, shortly before the reduction in force occurred. (Pellico Dep., 16:18-17:12). Reid testified that he was unaware of any potential requirement to lay-off any employees in August 2003 when Brown was hired. (Doc. #32, Deposition of Scott Reid (Reid Dep.), 60:7-61:15). Donna Durfey, Reid's supervisor and the other decision-maker involved in the reduction in force, also was unaware of the budget cuts and resulting lay-off of employees in August 2003. (Doc. #32, Deposition of Donna Durfey, 33:24-36:16). However, Durfey knew that Utilx's business historically decreased in October and November in the prior two years. (Id., 35:7-11). Additionally, budget cuts appear to be a well-known annual event between Utilx and Florida Power and Light. (Pellico Dep, 16:18-17:4). The decline for Utilx's services in the Fall season of the prior two years and known annual budget cuts would appear to militate against the hiring of a new employee during that time.

Third, based on the subject reduction in force and prior reductions in force, Utilx terminated the employment of several employees who were over the age of fifty. (Doc. #29, p. 13). These employees' ages ranged from fifty-four years old to sixty-three years old at the time of their respective discharges.

Based on the totality of the evidence, the age-based comments allegedly made by Reid to plaintiff's co-workers, and Reid's purported pattern of terminating older employees in favor of younger replacements when a reduction in force occurred, the Court concludes that plaintiff has introduced sufficient evidence to avoid summary judgment on his age discrimination claim.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #27) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of April, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record